UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------X

ROSS WEIL and BRETT ROYCE,

               Plaintiffs,

   - against -               07 Civ. 7748 (DAB)
                              MEMORANDUM & ORDER

AMERICAN UNIVERSITY,

               Defendant.

--------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 1/2/2008

DEBORAH A. BATTS, United States District Judge

    Plaintiffs Ross Weil and Brett Royce bring suit against Defendant American University alleging that it caused defamatory statements about them to be published in its alumni magazine. Plaintiffs individually damages in excess of Seven Hundred and Fifty Thousand Dollars ($750,000.00) for the alleged defamation. Now before this Court is Defendant's Motion to Dismiss for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2) and its alternative Motion to Transfer Venue to the District of the District of Columbia pursuant to 28 U.S.C. §§ 1404 and 1406. For the reasons contained herein, Defendant's Motion to Dismiss is GRANTED.[1]

---

   [1]    The Court does not reach Defendant's Motion to Transfer Venue.

## I. BACKGROUND

Defendant is a not-for-profit corporation "organized under the laws of the District of Columbia, with its principal place of business located at 4400 Massachusetts Avenue, NW, Washington, D.C." (Fagin Decl. dated October 18, 2007 ¶ 2 [hereinafter "Fagin Decl."].) Plaintiff Ross Weil graduated from the Kogod School of Business of American University in 2002; he presently works and resides in New York City. (Weil Decl. ¶¶ 1-2 & 8.) Plaintiff Brett Royce graduated from the School of International Service of American University in 2001 and also works and resides in New York City. (Royce Decl. ¶¶ 1-2 & 5.) As alumni of American University, both Plaintiffs automatically began to receive American (the "Magazine"), a magazine published by Defendant. (Fagin Decl. ¶¶ 3 & 8.)

The Magazine is published by Defendant three times each year and is distributed free of charge to alumni of American University as well as to "parents of current undergraduate students, staff, faculty, emeriti faculty, and selected current and former donors. (Id. ¶¶ 3 & 8-9.) The Magazine is distributed to approximately 97,000 recipients throughout the United States, Mexico and several other countries. (Id. ¶¶ 6 & 10). The Magazine is "not available on newsstands" and is not

2

circulated to people unaffiliated with American University. (Id. ¶ 11.)

The Magazine contains news related to the American University community, including stories about athletics, profiles or features about faculty and their research activity, alumni, academic programs, fund-raising programs, service activities and occasional student profiles. (Id. ¶ 14.) The Magazine's content is developed by Defendant's employees who write the articles and set the layout for the Magazine in offices located at its Tenley campus in Washington, D.C. (Id. ¶ 4.) The Magazine is printed and mailed to recipients from locations in Virginia. (Id. ¶¶ 5-6.)

Defendant does not have any offices, employees or agents for the receipt of service of process in New York. (Fagin Decl. ¶¶ 17-18.) Defendant also does not have a license to do business in New York. (Id. ¶ 17.) Plaintiffs have submitted to the Court supporting declarations from two individuals who are also alumni of American University which state that Defendant has solicited donations from them by mail and that Defendant has sponsored alumni events in New York. (See Ondyak Decl. ¶¶ 1-5 & Gootzeit Decl. ¶¶ 1-6.) Neither of these declarations state, however, that such activities by Defendant in New York are connected to

3

the Magazine or are related to the allegedly defamatory statements that Plaintiffs complain of.

Defendant for its part acknowledges that it conducts the following activities in New York:

> From time to time, the University will send representatives to the state of New York to attend college fairs, scout for sports teams, conduct interviews of prospective students, offer social, educational and career-networking programs to alumni, and visit prospective donors just as it does in any other sate, and just as most universities do.

(Fagin Decl. ¶ 19.)  Defendant also acknowledges that it owns a small tack of land bequeathed to it by a donor.  (Id. ¶ 21.) Nevertheless, Defendant asserts that its activities in New York are not performed for the "purpose of the publication of the Magazine" and that the real property it owns within the state has no connection to the Magazine.  (Id. ¶¶ 19 & 21.)  Additionally, Defendant asserts that it has no bank accounts, telephone listings or mailing address in New York.  (Fagin Decl. dated October 31, 2007 ¶¶ 2 & 5-6 [hereinafter "2d Fagin Decl."].) Defendant also asserts that its Office of Development & Alumni Programs, which edits the "Class Notes" section of the Magazine, has not sponsored the New York alumni events referred to in Plaintiffs' supporting declarations.  (Id. ¶¶ 7-9.)

While most of the Magazine's content is developed internally, the "Class Notes" section of the Magazine --

4

containing "very short profiles of alumni" -- are compiled from summaries of stories found in news-wire services, press releases, newspapers or trade journals and from submissions made by regular mail, e-mail, or over the Internet through Defendant's web site. (Fagin Decl. ¶ 15.) Plaintiffs allege that the Class Notes section of the Spring 2007 edition of the Magazine contained "defamatory statements made against the Plaintiffs by the Defendant." (Compl. ¶ 8, Ex. A.)

The allegedly defamatory statement ("alumni profile") contained in the Magazine is as follows:

> Ross Weil, Kogod/BS, was named chief operating officer of the Gay Rights Brigade, which lobbies for constitutional amendment providing for homosexual privacy and marriage rights. He married his life-partner, Brett Royce, SIS/BA '01, on June 10, 2006, in Boston. Ross lives in New York.

(Id. Ex. A.) The Complaint alleges that the alumni profile falsely "imputes homosexual behavior" between the two Plaintiffs. (Id. ¶ 17, 29.) The alumni profile also contains false statement about Plaintiff Weil. (Id. ¶ 18.) Plaintiffs allege that Defendant published the alumni profile out of malicious and reckless disregard for the truth. (Id. ¶¶ 20, 31.)

Plaintiffs allege that on June 29, 2007, they made a demand on Defendant "for an agreed upon figure" but that Defendant rejected the demand. (Id. ¶ 10.) On August 30, 2007 Plaintiffs filed the instant suit on the basis of diversity jurisdiction.

5

(Id. ¶ 3.)  The only specific allegation contained in the Complaint regarding whether Defendant is subject to personal jurisdiction in New York is that the Magazine "has a large circulation to the Alumni community of America and is sent to Alumnus throughout the Country and in the State of New York."  (Id. ¶ 9.)

## II. DISCUSSION

A. Legal Standard for a Motion to Dismiss for Lack of Personal Jurisdiction Pursuant to Fed. R. Civ. P. 12(b)(2)

On a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(2), the plaintiff bears the burden of establishing that the court may exercise jurisdiction over the defendant.  Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez, 171 F.3d. 779, 784 (2d Cir. 1999); City of New York v. CycoNet, 383 F. Supp.2d 526, 540 (S.D.N.Y. 2005).  "[T]he plaintiff need persuade the court only that its factual allegations constitute a prima facie showing of jurisdiction."  Warner Bros. Entertainment Inc. v. Ideal World Direct, ---F. Supp.2d---, 2007 WL 2807757 (S.D.N.Y. 2007) (citing Ball v. Metallurgie Hoboken-Overpelt, S.A., 902 F.2d 194, 197 (2d Cir. 1990)).  Moreover, "[i]n deciding a pretrial motion to dismiss for lack of personal jurisdiction a district court has considerable procedural leeway."  Marine Midland Bank, N.A. v.

6

Miller, 664 F.2d 899, 904 (2d Cir. 1981) (citations omitted). The court may "determine the motion on the basis of affidavits alone or it may permit discovery in aid of the motion; or it may conduct an evidentiary hearing on the merits of the motion." Id. "Because a motion to dismiss based on lack of personal jurisdiction is inherently a matter requiring the resolution of factual issues outside the pleadings . . . all pertinent documentation submitted by the parties may be considered in deciding the motion." Mantello v. Hall, 947 F. Supp. 92, 95 (S.D.N.Y. 1996) (quotations and citations omitted). "Eventually personal jurisdiction must be established by a preponderance of the evidence, either at an evidentiary hearing or at trial. But where the issue is addressed on affidavits, all allegations are construed in the light most favorable to the plaintiff and doubts are resolved in the plaintiff's favor." A.I. Trade Fin., Inc. v. Petra Bank, 989 F.2d 76, 79 (2d Cir. 1993).

To determine whether personal jurisdiction exists over Defendant in this matter, the Court applies New York law. Under New York law, Defendant, a non-domiciliary, could be subject to personal jurisdiction within the state under either CPLR § 301,

providing for general jurisdiction, or under the New York long-arm statute, CPLR § 302.[2]

B.  Defendant is not Subject to General Personal Jurisdiction in New York

General personal jurisdiction may be asserted over corporations "doing business" in New York pursuant to CPLR § 301. See CPLR § 301; Wiwa v. Royal Dutch Petroleum Co., 226 F.3d 88, 95 (2d Cir. 2000). The statute permits "a court to exercise jurisdiction over a foreign corporation on any cause of action if the defendant is engaged in such a continuous and systematic course of 'doing business' here as to warrant a finding of its 'presence' in this jurisdiction." Landoil Resources Corp. v. Alexander & Alexender Servs., Inc., 918 F.2d 1039, 1043 (2d Cir. 1990) (internal quotations omitted) (citations omitted). "Doing business" requires that the defendant be present in New York "not occasionally or casually, but with a fair measure of permanence and continuity." Id. (citing Tauza v. Susquehanna Coal Corp., 220 N.Y. 259, 267 (1917)). The substantive inquiry consists of a "simple and pragmatic" test in which the courts focus on a "traditional set of indicia" that include (1) the existence of a

---

[2]  Plaintiffs concede that Defendant is not subject to any other basis for personal jurisdiction under New York law. (See Pls.' Opp. at 3 n.4.)

company office in the state, (2) the presence of bank accounts or property in the state, (3) the maintaining of a phone listing in the state, (4) any public relations work done in the state, and (5) attempts by the company to promote its interests through agents or other individuals permanently located in the state. Wiwa, 226 F.3d at 98 (citations omitted).

Although mere solicitation of business is insufficient to support a finding of personal jurisdiction, "substantial and continuous" solicitation coupled with "other activities of substance in the state" will support a finding that a defendant is "doing business" in New York. Landoil, 918 F.2d at 1043-44; Aquascutum of London, Inc. v. S.S. Am. Champion, 426 F.2d 205 (2d Cir. 1970) (holding that the "'solicitation-plus' rubric . . . involve[s] either some financial or commercial dealings in New York, or the defendant's holding himself out as operating in New York, either personally or through an agent"). "In evaluating the existence of other activities of substance, courts 'tend to focus on a physical corporate presence,' such as solicitation 'from a permanent locale within the state,' but temporary visits by employees based out of state may also qualify." Big Apple Pyrotechnics and Multimedia, Inc. v. Sparktacular, Inc., No. 05 Civ. 9994 (KMW), 2007 WL 747807, at *2 (S.D.N.Y. Mar. 9, 2007) (citations omitted). Thus, for example, "mere solicitation of

9

business within the state does not constitute the transaction of business within the state, unless the solicitation in New York is supplemented by business transactions occurring in the state." O'Brien v. Hackensack Univ. Med. Ctr., 305 A.D.2d 199, 760 N.Y.S.2d 425, 427 (App. Div. 1st Dep't 2003).

Plaintiffs argue that the Defendant is subject to general jurisdiction in New York pursuant to CPLR § 301 under the "solicitation plus" doctrine. (Pls.' Opp. at 3-4.) It is undisputed that Defendant solicits business within New York by seeking donations from alumni and holding events for prospective students. (See, e.g. Fagin Decl. ¶ 19 & Ondyak Decl. ¶ 3.) Colleges and universities in the United States commonly engage in these types of activities. It is also undisputed, however, that Defendant does not have any continuous, physical presence in New York, such as an office or permanent agents and employees. Plaintiffs moreover have not demonstrated that Defendant conducts any other "other activities of substance in the state", other than mere solicitation, to warrant a finding that it is subject to general jurisdiction in New York under the solicitation plus doctrine. See Landoil, 918 F.2d at 1043-44.

Defendant has demonstrated that: (1) it does not have a license to do business in the state of New York; (2) has no designated agent for the receipt of service of process; (3)

10

maintains no offices or employees within the state; (4) maintains no bank accounts in the state; (5) has no telephone listings within the state; (6) has no mailing address in the state; (7) issues tax-exempt bonds through the District of Columbia Revenue Bond Program; and (8) has not held Board of Trustees meetings within the state since 2000. (Fagin Decl. ¶¶ 17-18 & 2d Fagin Decl. 2 & 5-6.) Plaintiffs, on the other hand, allege that volunteer leaders of American University's alumni groups in New York are "agents and/or employees of American University in New York City." (Pls.' Opp. at 5.) As Defendant makes clear, these local alumni leaders are not employees and have no authority to bind Defendant. (2d Fagin Decl. ¶ 11.) Likewise, although Defendant may have an insurance carrier in New York, there is no showing that the insurer is an agent of Defendant. See Landoil, 918 F.2d at 1046 ("A business relationship with a New York entity does not provide a sufficient basis for jurisdiction at least in the absence of a showing that that company has become an agent or division of the company over which the plaintiff seeks to exercise personal jurisdiction") (citing Insurance Co. of PA v. Centaur Ins. Co., 590 F. Supp. 1187, 1189 (S.D.N.Y. 1984)). Equally weak is Plaintiffs' assertion that the sporadic social events held for Defendant's alumni in New York constitute activity beyond mere solicitation. (See Pls.' Opp. at 5-6.) At

11

best, just as with the information sessions Defendant conducts for prospective students, these activities mere constitute solicitation. Plaintiffs cannot show that Defendant, aside from soliciting donations or applications for admission, conducts any substantial business or financial transactions in New York. See Kingsepp v. Wesleyan University, 763 F. Supp. 22, 27 (S.D.N.Y. 1991) (finding that co-defendant Dartmouth University was subject to general jurisdiction under "solicitation plus" doctrine because in addition to solicitation "Dartmouth has engaged in substantial commercial activity in the state. Dartmouth has a banking relationship with Chase Manhattan Bank that dates back to at least 1982. Since that time, Dartmouth has maintained at least two accounts in Chase, with a balance in one account as high as $14,487,051.88 in 1987. Further, from 1982 to 1987, Dartmouth has issued bonds in New York through Goldman Sachs on at least four separate occasions."). Further, the fact that Defendant owns some real property in New York is not dispositive; the one-half acre tract of land owned by American was bequeathed to it by a donor. (Fagin Decl. ¶ 21.) The property is thus analogous to an investment and the investment of money in New York cannot alone be considered a form of "doing business" for the purpose of CPLR § 301. See, e.g. Schenker v. Assicurazioni Generali S.p.A., Consol., No. 98 Civ. 9186 (MBM), 2002 WL

12

1560788, at *5 (S.D.N.Y. 2002) (holding "investing money in New York alone cannot be considered a form of "doing business" for the purpose of § 301; 'if it were, then almost every company in the country would be subject to New York's jurisdiction'") (quoting Clarke v. Fonix Corp., No. 98 Civ. 6116 (RPP), 1999 WL 105031, at *5 (S.D.N.Y. Mar. 1, 1999)).

Accordingly, the Court finds that Defendant is not subject to general personal jurisdiction in New York under CPLR § 301.

C.  Defendant is not Subject to the Personal Jurisdiction Under the New York Long-Arm Statute

To determine whether personal jurisdiction is proper over a nonresident defendant in a diversity case, "the court must look first to the long-arm statute of the forum state . . . . If the exercise of jurisdiction is appropriate under the statute, the court then must decide whether such exercise comports with the requisites of due process." Bensusan Restaurant Corp. v. King, 126 F.3d 25, 27 (2d Cir. 1997) (citing PDK Labs, Inc. v. Friedlander, 103 F.3d 1105, 1108 (2d Cir. 1997)). Pursuant to CPLR § 302(a)(1), "a court may exercise personal jurisdiction over any non-domiciliary . . . who in person or through an agent: (1) transacts any business within the state or contracts anywhere to supply goods or services in the state." CPLR § 302(a)(1). To

13

determine whether a defendant is subject to personal jurisdiction under CPLR § 302(a)(1), "a court must decide (1) whether the defendant "transacts any business" in New York and, if so, (2) whether this cause of action "aris[es] from" such a business transaction." Best Van Lines, Inc. v. Walker, 490 F.3d 239, 246 (2d Cir. 2007) (citing Deutsche Bank Sec., Inc. v. Montana Bd. of Invs., 7 N.Y.3d 65, 71, 850 N.E.2d 1140, 1142, 818 N.Y.S.2d 164, 166 (N.Y. 2006)). A nondomiciliary "transacts business" under CPLR § 302(a)(1) when he "purposefully avails [himself] of the privilege of conducting activities within [New York], thus invoking the benefits and protections of its laws." CutCo Industries, Inc. v. Naughton, 806 F.2d 361, 365 (2d Cir. 1986) (quoting McKee Electric Co. v. Rauland-Borg Corp., 20 N.Y.2d 377, 382, 283 N.Y.2d 34, 229 N.E.2d 604 (1967) (quoting Hanson v. Denckla, 357 U.S. 235, 253, 78 S.Ct. 1228, 1228 (1958))). While the showing necessary for a finding that the defendant has "transacted business" is "considerably less than that needed to establish defendant's 'doing business' [under CPLR § 301]", Hoffritz For Cutlery, Inc. v. Amajac, Ltd., 763 F.2d 55, 58 (2d Cir. 1985), CPLR § 302(a)(1) also requires "the existence of some articulable nexus between the business transacted and the cause of action sued upon." McGowan v. Smith, 52 N.Y.2d 268, 272, 437 N.Y.S.2d 643, 419 N.E.2d 321 (N.Y. 1981); see also Kronisch v.

14

United States, 150 F.3d 112, 130 (2d Cir. 1998) ("In order for a cause of action to 'arise out of' a party's activities in New York, there must be 'an articulable nexus,' or a 'substantial relationship,' between the claim asserted and the actions that occurred in New York") (citing Kreutter v. McFadden Oil Corp., 71 N.Y.2d 460, 527 N.Y.S.2d 195, 198-99, 522 N.E.2d 40 (N.Y. 1988)). "No single event or contact connecting defendant to the forum state need be demonstrated; rather, the totality of all defendant's contacts with the forum state must indicate that the exercise of jurisdiction would be proper." CutCo Industries, 806 F.2d at 365. Thus, for example, "[p]roof of one transaction in New York is sufficient to confer jurisdiction [over a nonresident] as long as the activities of the defendant in question were purposeful and there is a substantial relationship between the transaction and the claim asserted." Staten Island Hosp. v. Alliance Brokerage Corp., 166 A.D.2d 574, 560 N.Y.S.2d 859, 861 (App. Div. 2d Dep't. 1990).

In the context of defamation suits, however, "New York courts do not interpret "transact[ing] business" to include mere defamatory utterances sent into the state." Best Van Lines, 490 F.3d at 248. After reviewing New York state court cases on the issue, the Second Circuit concluded that "when the defamatory publication itself constitutes the alleged "transact[ion of]

15

business" for the purposes of section 302(a)(1), more than the distribution of a libelous statement must be made within the state to establish long-arm jurisdiction over the person distributing it." Id. The Second Circuit also observed that "[u]nder the 'arises from' prong, New York courts have also concluded that they lacked jurisdiction over out-of-state defendants accused of having uttered defamatory falsehoods where the '[defamation] claim did not arise from the defendants' specific business transactions in New York.'" Id. at 249-50. (quoting Realuyo v. Villa Abrille, 01 Civ. 10158 (JGK), 2003 WL 21537754, at *6 (S.D.N.Y. July 8, 2003).

Plaintiffs seek damages as a result of the publication of allegedly defamatory statements in an alumni magazine published by Defendant. Defendant has clearly demonstrated, however, that the business of publishing and distributing the Magazine -- including content development, layout, printing and mailing -- all take place outside of New York. (Fagin Decl. ¶¶ 4-7.) The mere fact copies of the Magazine were mailed to individuals in New York does not constitute a transaction of business under CPLR § 302(a)(1) in the absence of additional facts connecting either the publication or the allegedly defamatory statements contained therein to New York. See Best Van Lines, 490 F.3d at 249 ("To be sure, New York courts have found jurisdiction in cases where the

16

defendants' out-of-state conduct involved defamatory statements projected into New York and targeting New Yorkers, but only where the conduct also included something more"). Plaintiffs have not produced any such additional facts. Moreover, they have failed to demonstrate that there is a nexus between the allegedly defamatory statements contained in the Magazine and other business transactions that Defendant conducts in New York. Even if Defendant's sponsoring of alumni social events and information sessions for prospective students in New York could be considered business transactions under CPLR § 302(a)(2), there is obviously no connection between such activities and the alleged defamation at issue in Plaintiffs' suit. See Talbot v. Johnson Newspaper Corp., 71 N.Y.2d 827, 829 522 N.E.2d 1027 (N.Y. 1988) (holding that while defendants might have had purposeful activities in New York, based on the fact that one defendant attended college in New York, there was no nexus between such activities and the allegedly defamatory statements made by defendants).

Accordingly, the Court finds that Defendant is not subject to personal jurisdiction in New York under CPLR § 302(a)(1).

### III. CONCLUSION

For the foregoing reasons, the Court finds that Defendant is not subject to personal jurisdiction in New York under either

CPLR § 301 or CPLR § 302(a)(1). Accordingly, Defendant's Motion to Dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(2) is hereby GRANTED. The Clerk of Court is directed to close the docket in this case.

SO ORDERED.

DATED:   New York, New York
         January 2, 2008

_____
DEBORAH A. BATTS
United States District Judge